**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE *et al.*, | : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 08-2187 (RMU) |
| v. | : : | Re Document Nos.: | 82, 113 |
| WILMA LEWIS, in her official capacity as Assistant Secretary for Lands and Minerals Management of the United States Department of the Interior *et al.* | : : : : : : | | |
| Defendants. | : : | | |

**MEMORANDUM OPINION**

GRANTING CARBON COUNTY, UTAH'S MOTION TO TRANSFER; GRANTING THE UTAH SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION'S MOTION TO TRANSFER

**I. INTRODUCTION**

This matter comes before the court upon two intervenor-defendants' motions to transfer the action to the United States District Court for the District of Utah. The plaintiffs, a group of environmental organizations, challenge the federal government's proposed usage of various tracts of public land in Utah. The plaintiffs initially brought suit in this court against various federal officials in the U.S. Department of the Interior and the U.S. Bureau of Land Management. Several Utah-based defendants subsequently intervened and moved to transfer this case to the judicial district in which the land is located. Because the public and private interest factors weigh in favor of transfer, the court grants the intervenor-defendants' respective motions.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiffs in this matter are a group of organizations dedicated to environmental protection and the conservation of natural resources.  2d Am. Compl. ¶¶ 9-19.  They challenge three resource management plans ("RMPs") created by the U.S. Bureau of Land Management ("BLM") that provide a blueprint for managing several million acres of public lands located in Utah.  Compl. ¶ 1.  The plaintiffs contend that public lands at issue contain large portions of Utah's "magnificent red rock wilderness, wild stretches of rivers, irreplaceable archeological sites and cultural resources."  *Id.*  The plaintiffs allege that the RMPs will permit the environmental despoliation of these areas.  *Id.*

The defendants maintain that each of these RMPs were created and developed by BLM personnel in Utah.  *See* Def. Carbon County's Mot. to Transfer at 4.  According to the defendants, the BLM's local field offices in Utah were tasked with gathering relevant data and drawing up initial plans for management of these lands.  *Id.*  After deciding on a course of action, the BLM's field offices invited public comment on the proposals, which was received by those same offices.  *Id.*  The RMPs were then prepared in the local field offices in Utah with assistance from BLM's Utah State office.  *Id.* at 5.  After the RMPs were crafted, they were reviewed by the BLM director in Washington, D.C.  *Id.*  The Director concluded that the proposed RMPs were consistent with federal laws and regulations, and the Department of the Interior's Assistant Secretary for Land and Minerals Management signed the final approval of the RMPs.  *See id.* at 6-8.

The plaintiffs brought suit against two defendants: Wilma Lewis in her official capacity as Assistant Secretary for Lands and Minerals Management at the United States Department of

the Interior ("DOI")[1] and the BLM.  2d Am. Compl. ¶¶ 22-23.  The plaintiffs maintain that these RMPs violate the Administrative Procedures Act and a number of federal laws designed to protect the environment.  *Id.* ¶¶ 130-87.

In January 2009, the court allowed a number of defendants to intervene, including the State of Utah, a number of counties located in Utah, the Utah School and Institutional Trust Lands Administration and a number of gas and oil companies.  *See* Minute Order (May 28, 2009).  Two of these defendants – Carbon County, Utah and the Utah School and Institutional Trust Lands Administration – subsequently moved to transfer this action to the United States District Court for the District of Utah ("District of Utah").  *See generally* Def. Carbon County's Mot. to Transfer ("Carbon County Mot."); Def. Utah School and Institutional Trust Lands Administration's Mot. to Transfer ("USITLA Mot.").  With these motions ripe for adjudication, the court now turns to the applicable legal standards and the parties' arguments.

### III.  ANALYSIS

#### A.  Legal Standard for Venue under 28 U.S.C. § 1391(b) and Transfer Pursuant to 28 U.S.C. § 1404(a)

When federal jurisdiction is not premised solely on diversity, 28 U.S.C. § 1391(b) controls venue, establishing that venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

---

[1] The plaintiffs initially brought suit against C. Stephen Allred, who held this position at the time the second amended complaint was filed. 2d Am. Compl. ¶ 18. Mr. Allred's replacement has been substituted as the named defendant pursuant to FED. R. CIV. P. 25(D).

3

28 U.S.C. § 1391(b).

In an action where venue is proper, 28 U.S.C. § 1404(a) nonetheless authorizes a court to transfer the action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice[.]"  28 U.S.C. § 1404(a).  Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Under this statute, the moving party bears the burden of establishing that transfer is proper.  *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

Accordingly, the defendants must make two showings to justify transfer.  First, the defendants must establish that the plaintiffs originally could have brought the action in the proposed transferee district.  *Van Dusen*, 376 U.S. at 622.  Second, the defendants must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that district.  *Trout Unlimited*, 944 F. Supp. at 16.  As to the second showing, the statute calls on the court to weigh a number of case-specific private- and public-interest factors. *Stewart Org.*, 487 U.S. at 29.  The private-interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill. 1989); 15 FED. PRAC. & PROC. § 3848).  The public-interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of

the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id*.

### B. The Court Grants the Intervenor-Defendants' Motion to Transfer

#### 1. Venue Is Proper in the District of Utah

The threshold question to be resolved under 28 U.S.C. § 1404(a) is whether this action could have been brought in the District of Utah. *Trout Unlimited*, 944 F. Supp. at 16. Because this action concerns real property situated in Utah, all parties conclude that this suit could have been brought in the District of Utah. *See* 28 U.S.C. § 1391(e); Carbon County Mot. at 5-6; USITLA Mot. at 13; Pls.' Opp'n at 12 n.6. The court agrees. *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 87 (D.D.C. 2004) (concluding that venue was proper in the District of Utah because the dispute concerned land in Utah). Because venue would be proper in the District of Utah, the court now turns to its analysis of the relevant private-interest and public-interest factors.

#### 2. The Private-Interest Factors Weigh in Favor of Transfer to the District of Utah

##### a. Weighing the Plaintiffs' Choice of Forum Against the Defendants' Choice of Forum

The defendants contend that a transfer would be appropriate notwithstanding the plaintiffs' decision to bring suit in the District of Columbia because there are no meaningful ties between this controversy and the District of Columbia. Carbon County Mot. at 1-3, 15-16; USITLA Mot. at 11-13. More specifically, the defendants argue that the plaintiffs have not shown that the BLM's personnel in Washington, D.C. played any meaningful role in crafting the

5

RMPs at issue. *Id.* Rather, the defendants argue that the RMPs were created, drafted and developed in the BLM's field offices in Utah. *Id.*

The plaintiffs counter that the federal BLM defendants in this case played a significant role in finalizing the RMPs, thus establishing a substantial nexus between this controversy and the District of Columbia. Pls.' Opp'n at 13-14. The plaintiffs further argue that a substantial connection between the facts of this case and the District of Columbia can be drawn from the national importance of the environmental issues implicated by this suit. *Id.* at 14-15.

The court begins its analysis by weighing the plaintiffs' choice to bring suit in the District of Columbia against the defendants' countervailing suggestion that this case should be heard in the District of Utah. *See Trout Unlimited*, 944 F. Supp. at 16. A plaintiff's choice of forum "is due substantial deference and, unless the balance of convenience is strongly in favor of the defendants, should rarely be disturbed." *Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*, 621 F. Supp. 906, 907 (D.D.C. 1985). The deference afforded to a plaintiff's choice of forum is diminished, however, where "that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979); *see also Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 939 F. Supp. 1, 3 (D.D.C. 1996) (noting that a plaintiff's choice of forum is entitled to less deference when there is "an insubstantial factual nexus with the plaintiff's choice"). Transfer is thus proper when "the material events that constitute the factual predicate for the plaintiff's claims occurred" in the transferee district. *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6-7 (D.D.C. 1996).

Here, the defendants provide substantial detail regarding how each of the RMPs were drafted, developed and finalized in the BLM's field offices in Utah. Carbon County Mot. at 13-

15; USITLA Mot. at 11-13. By the plaintiffs' own admission, the Washington office only provided "broad planning guidance . . . and did not interfere in the development of the individual plans." Pls.' Opp'n, Ex. 2. The plaintiffs' submitted evidence tends to show that the Washington office extended only limited "verbal guidance" to the BLM's field offices in Utah. *Id.* The plaintiffs do not suggest, therefore, that the BLM's D.C. office imposed any meaningful limitations on the field offices' discretion. *See id.* The court thus concludes that the BLM's Washington, D.C. office did not play a substantial role in the creation of the RMPs.

Even assuming *arguendo* that the Washington, D.C. office was involved by setting the parameters of the policies to be pursued, this fact would not necessarily create a nexus between the controversy and the District of Columbia. *See, e.g.*, *Norton*, 315 F. Supp. 2d at 87 (concluding that no significant nexus existed between Utah and the District of Columbia given that the official decisions at issue were made in Utah). The court notes that the "[m]ere involvement on the part of federal agencies, or some federal officials who are located in Washington . . . is not determinative" for the purposes of venue. *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 26 (D.D.C. 2002). A plaintiff seeking to sue federal defendants in Washington, D.C. must instead demonstrate some "substantial personalized involvement by a member of the Washington, D.C." agency before the court can conclude that there are meaningful ties to the District of Columbia. *S. Utah Wilderness v. Norton*, 2002 WL 32617198, at *3 (D.D.C. June 28, 2002). The plaintiffs have submitted no evidence that the BLM's Washington, D.C. office played any substantial or personal involvement in the decision to create the RMPs at issue. Thus, the court concludes that the acts taken by officials in the BLM's Washington, D.C. office do not create a factual nexus between this controversy and the District of Columbia.

In the alternative, the plaintiffs argue that this controversy implicates "nationally important" questions of environmental law, thus concluding that this suit deserves to be heard in the nation's capital. Pls.' Opp'n at 14-15. Certain cases may touch upon matters of national importance that are somehow extrinsic to the environmental quality of the land or property at issue. *E.g.*, *Otay Mesa Property L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126-27 (D.D.C. 2008) (holding that the national interest in protecting endangered species may outweigh the negligible effect the issue would have on local residents); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (concluding that the national interest in maintaining oil reserves sufficiently outweighed a local Alaskan interest in land). Here, the plaintiffs make clear that national importance of the controversy is derived from the unique character and beauty of Utah's land. *See* 2d Am. Compl. ¶ 2. The plaintiffs have suggested no matters of national importance that are extrinsic to the land itself. *Id.*; *see Norton*, 2002 WL 32617198, at *3 (transferring an action from D.C. to Utah despite the plaintiff's claim that the environmental controversy had nationwide importance). Accordingly, the court concludes that an analysis of the parties' respective choice of forum weighs in favor of transfer to the District of Utah.

### b. Whether the Claim Arose Elsewhere

The defendants also argue that transfer is proper because this claim originated in Utah. More specifically, they argue that the land at issue is located in Utah and that the RMPs were written over a period of years by BLM personnel who worked in Utah. Carbon County Mot. at 15-16; USITLA Mot. at 11-13. In contrast, the plaintiffs point to the actions taken by BLM officials in Washington, D.C. to support their conclusion that the claim arose in this district. *See* Pls.' Opp'n at 3-5; *id.*, Ex. 2.

As noted earlier, those individuals who worked in the BLM's Utah offices made the lion's share of decisions regarding the details and contours of the RMPs at issue. *See supra* Part III.B.2.a. The Washington, D.C. office appears to have issued final approval of the RMPs without substantially modifying them. *Id.* The court therefore concludes that the majority of the events that give rise to the claim arose in Utah. Accordingly, the court determines that this factor – whether the claim arose elsewhere – also weighs in favor of transfer to the District of Utah.

### c.  The Convenience of the Parties

The defendants argue that the District of Utah would be a more convenient forum because several of the defendants are based in Utah. Carbon County Mot. at 16-17. In particular, the defendants note that the three BLM offices that composed the plans are located in Utah, as are seven gas and oil companies that intervened as defendants, as well as three local governmental entities acting as intervenor-defendants. *Id.* In contrast, the plaintiffs note that three of the eleven plaintiffs are headquartered in Washington, D.C. Pls.' Opp'n at 15.

Because a number of the parties on both sides of this dispute are located in Washington, D.C. and others are located in Utah, this factor is in relative equipoise. *See Norton*, 2002 WL 32617198, at *3. Accordingly, the court concludes that this factor does not militate either for or against transfer.

### d. The Convenience of Witnesses and Access to Sources of Proof

The defendants argue that neither side would be significantly inconvenienced by transferring this case to the District of Utah.  *See* USITLA Mot. at 15.  The plaintiffs concede that any inconvenience caused by transfer would be minimal.  Pls.' Opp'n at 17-18.

Courts must consider the convenience of witnesses and ease of access to proof when ruling on a motion to transfer.  *Trout Unlimited*, 944 F. Supp. at 16.  In a case regarding the review of an administrative agency's decision, however, the convenience of witnesses and the ease of access to proof are not dispositive factors.  *See* USITLA Mot. at 16; Pls.' Opp'n at 17; *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 68-69 (D.D.C. 2003).  This is because the case will be decided, in all likelihood, on the administrative record alone.  *Trout Unlimited*, 944 F. Supp. at 17 ("The convenience of witnesses . . . has less relevance because this case involves judicial review of an administrative decision.").  Accordingly, the court concludes that this factor does not weigh heavily towards or against transfer.

### 2. The Public Interest Factors Weigh in Favor of Transfer

### a. The District of Utah's Familiarity with the Governing Laws

The defendants argue that the district court in Utah is better equipped to address the plaintiffs' claim as that court has previously adjudicated several legal disputes that relate to this controversy.  USITLA Mot. at 10; Carbon County Mot. at 3.  In contrast, the plaintiffs argue that this court is capable of handling the matters of federal law that are implicated by their claim.  Pls.' Opp'n at 18-19.

While it is undisputed that this court is capable of interpreting the various federal statutes that govern the plaintiffs' claim, the defendants are correct to note that the subject-matter

underlying this case has been the subject of extensive litigation in the District of Utah. *See Utah v. Babbitt*, 137 F.3d 1193 (10th Cir. 1998); *State of Utah v. United States Dep't of the Interior*, 535 F.3d. 1184 (10th Cir. 2008). This factor therefore weighs, albeit slightly, in favor of transfer. *See Norton*, 2002 WL 32617198 at *4.

### b. The Relative Congestion of the Transferee and Transferor Courts

Although courts should consider the relative congestion of transferor and transferee courts, *Trout Unlimited*, 944 F. Supp. 19-20, neither party here argues that transfer would accelerate or delay the litigation. Accordingly, the court turns to the final (and most important) issue in its analysis: the local interest in deciding local controversies at home.

### c. The Local Interest in Deciding Local Controversies at Home

The defendants argue that Utah has a strong interest in having this controversy adjudicated in the District of Utah because the state will be directly impacted by the resulting judicial decision. USITLA Mot. at 13; Carbon County Mot. at 10-11. The plaintiffs counter that this controversy is not local because it poses questions of national significance. Pls.' Opp'n at 18.

Courts have noted that the most important of the public interest factors is the "local interest in having localized controversies decided at home." *Norton*, 2002 WL 32617198, at *5. This is because matters should generally be resolved in the forum where the people whose rights and interests are most affected by the suit are located. *Trout Unlimited*, 944 F. Supp. at 19-20; *Hawksbill Sea Turtle*, 939 F. Supp. at 3 n.5 (noting "the importance of allowing local citizens to attend and observe the proceedings of the case" due to the local nature of the action).

Ultimately, this case concerns distinct parcels of land located within Utah.  *See* 2d Am. Compl., Prayer for Relief.  The fact that this controversy will affect the use of discrete parcels of land counsels towards transfer to the judicial district where that land is located.  *See, e.g.*, *Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 99 (D.D.C. 2009) (stressing that "land commonly has been considered a local interest" due to its direct effects on local citizens).  Set against this local interest in land is the plaintiffs' argument that Utah's natural beauty should concern the nation at large.  Pls.' Opp'n at 18.  While there can be no debate about the objective natural beauty of these locations, this fact alone does not suffice to create a national interest that outweighs Utah's strong local interest in having local controversies decided within its borders.  *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49-50 (D.D.C. 2006) (holding that the Everglades' location in Florida outweighed the national interest in the natural beauty of the area); *Norton*, 315 F. Supp. 2d at 88-89 (concluding that local Utah interest outweighed any national interest in "protecting the many special places in Utah's canyon country").  Accordingly, the court concludes that the public-interest factors weigh in favor of transferring this case to the District of Utah.

In sum, the court concludes that the majority of the public-interest and private-interest factors weigh in favor of transferring this action to the District of Utah.  Accordingly, the court grants the intervenor-defendants' motions to transfer.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the intervenor-defendants' motions to transfer. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th day of February, 2012.

RICARDO M. URBINA
United States District Judge
