## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, et al., | |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| MARCILYNN BURKE, et al., | Consolidated Case No. 2:12CV257DAK |
| Defendants, | Judge Dale A. Kimball |
| ENDURING RESOURCES, et al., | |
| Intervenors-Defendants. | |
| SOUTHERN UTAH WILDERNESS ALLIANCE, et al., | |
| Plaintiffs, | |
| **v.** | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | |
| Defendants, | |
| KANE COUNTY, UTAH, et al., | |
| Intervenors-Defendants. | |

On November 4, 2013, this court entered a Memorandum Decision and Order on

Plaintiffs Southern Utah Wilderness Alliance, Natural Resources Defense Council, Wilderness

Society, National Parks Conservation Association, Grand Canyon Trust, Sierra Club, National

Trust for Historic Preservation, Center for Native Ecosystems, Utah Rivers Council, and Great

Old Broads for Wilderness's challenge to the Bureau of Land Management's ("BLM") 2008

Richfield Resource Management Plan ("RMP") and Travel Plan.  In that Memorandum Decision

and Order, the court granted the BLM's request to allow briefing on the proper remedy in the

event that the court entered a ruling adverse to the BLM's position.  The parties submitted briefs

on the remedy issue, conducted discovery, and then filed further briefing.  The briefing is

complete, and the court concludes that a hearing would not significantly aid in its determination

of the matter.  Accordingly, being fully advised, the court issues the following Memorandum

Decision and Order as to the proper remedy in this action.

## BACKGROUND

In its November 3, 2013 Memorandum Decision and Order on Plaintiffs' challenge to the

BLM's 2008 Richfield RMP and Travel Plan, the court agreed with the BLM on several issues

but made the following rulings adverse to the BLM: (1) the BLM failed to apply the required

minimization criteria in its preparation of the Travel Plan as required by 43 C.F.R. § 8342.1; (2)

the BLM violated the National Historic Preservation Act ("NHPA") by failing to take into

account the impact of OHV routes on archeological sites; (3) the BLM did not properly consider

the proposed Henry Mountains ACEC; (7) the BLM did not properly consider the eligibility of

Happy Canyon and Buck and Pasture Canyon for protection under the Wild and Scenic Rivers

Act ("WSRA").

## DISCUSSION

The parties agree that the proper remedy in this case is for the court to remand the

deficiencies found in the BLM's RMP and Travel Plan to the BLM.  The parties disagree,

however, as to whether the court should vacate the deficient portions of the RMP and Travel Plan

or leave those portions in place while the BLM addresses the deficiencies.  Part of that dispute is

based on the parties' differing views as to the effect of vacating the deficient portions of the RMP

and Travel Plan.

The BLM cites to the United States Supreme Court in *Florida Power & Light Co. v.

Lorion*, 470 U.S. 729, 743-44 (1985), in which the court gave the following guidance:

> The task of the reviewing court is to apply the appropriate APA
> standard of review, 5 U.S.C. § 706, to the agency decision based on
> the record the agency presents to the reviewing court.  If the record
> before the agency does not support the agency action, if the agency
> has not considered all relevant factors, or if the reviewing court
> simply cannot evaluate the challenged agency action on the basis of
> the record before it, the proper course, except in rare
> circumstances, is to remand to the agency for additional
> investigation or explanation.  The reviewing court is not generally
> empowered to conduct a *de novo* inquiry into the matter being
> reviewed and to reach its own conclusions based on such an
> inquiry.

*Id.* (citations omitted).  SUWA, however, cites this court to the APA provision stating that courts

"shall . . . hold unlawful and *set aside* agency action, findings, and conclusions found to be . . .

arbitrary, capricious or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (emphasis

added).  Under this provision of the APA, the normal remedy is to set aside agency action and

remand to the agency to act in compliance with its legal obligations.  *Citizens to Preserve

Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971).

SUWA recognizes that courts depart from the normal rule of setting aside illegal agency

action where it would defeat the purpose of the statute at issue.  "Ordinarily when a regulation is

not promulgated in compliance with the APA, the regulation is invalid.  However, when equity

demands, the regulation can be left in place while the agency follows the necessary procedures."

*Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995).  Other district

courts in the Tenth Circuit have also determined that courts have authority to determine whether

or not to vacate an agency action.  *See National Ski Areas Assoc. v. U.S.F.S.*, 910 F. Supp. 2d

1269, 1286-87 (D. Colo. 2012); *Coalition of Arizona v. Salazar*, 2009 U.S. Dist. Lexis 129808

(D.N.M. May 4, 2009).  The court, therefore, concludes that vacatur is not required.  The court

can consider the purposes of the relevant statutes and regulations as well as other equitable

considerations in determining whether to set aside the deficient portions of the RMP and Travel

Plan or allow them to remain in place while the BLM addresses the deficiencies identified in the

court's prior Memorandum Decision and Order.

The court's determination of whether to vacate the deficient portions of the RMP and

Travel Plan or let those portions remain in place during remand is complicated by the parties'

dispute as to the effect of vacatur.  The court's prior Memorandum Decision and Order held that

the BLM did not demonstrate that it had applied the required minimization criteria in designating

routes in the area defined as "limited" for OHV use and the BLM failed to sufficiently inventory

that area for impacts on historical artifacts under the NHPA.  The BLM contends that vacatur

would result in a return to the pre-2008 land use plans, making the area limited to OHV use open

again to unlimited OHV use.  SUWA, however, claims that vacatur would result in a closure of

all routes in the area limited to OHV use because SUWA did not challenge the BLM's RMP-

level designation of areas as "open," "closed," or "limited" for OHV use so the "limited" area

would remain limited to designated routes but all the routes would be vacated.  In essence, the

vacatur would cause the "limited" area to be closed because all route designations would be vacated.  Therefore, the dispute lies in whether the area designated "limited" would revert to the pre-2008 land use plans allowing unrestricted OHV use or have no designated routes and, thus, no legal OHV usage.

The BLM cites to several rulings from the D.C. Circuit court holding that "the effect of invalidating an agency rule is to 'reinstat[e] the rules previously in force.'" *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750, 757 (D.C. Cir. 1987) (quoting *Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983)).  Under this law, although SUWA did not contest the area designations, the "limited" area would revert back to being fully opened as it was under the land use plans that were in place before the 2008 Travel Plan.  The BLM agrees that a reversion to the pre-2008 structure would lead to wide-scale environmental impacts.  In addition, there is evidence that vacatur could cause confusion to the public and cause safety concerns for humans, wildlife, resources, and the natural environment.  Such a result is contrary to the purpose of the statutes at issue.  The court, therefore, concludes that it would be less harmful to the area if the Travel Plan's designated routes were left in place until the BLM can fully analyze whether those designations comply with the minimization criteria and the NHPA.

SUWA also asserts that the court should vacate the Travel Plan but stay the vacatur outside of the high-priority wilderness-quality lands for a period of two years.  Such action would close all routes within Wilderness Study Areas, Natural Areas, and within areas identified as Non-WSA lands having wilderness characteristics while leaving the remaining routes open during the remand period.  SUWA contends that this closure would affect only 12% of the designated routes in the limited area.  However, the BLM asserts that this closure would

effectively cut-off OHV access to approximately 48% of the limited area.  Whether eighty-eight

percent of the designated routes would remain in place or fifty-two percent is a significant

difference in opinion and the court is without sufficient information to determine which position

is correct.  Nevertheless, the court does not favor this type of micromanagement of the BLM on

remand.  The court would prefer that the BLM focus its time and resources on complying with

the court's directives in its prior Memorandum Decision and Order rather than resigning various

designated routes that may be designated for only a relatively short interim period.

        If the court does not vacate the travel plan, SUWA requests interim injunctive relief to

close all the routes currently designated in the limited area of the Richfield RMP and Travel Plan.

Although the court is aware that harm could happen as a result of the violations the court has

already found, the evidence of whether such harm is irreparable is not certain enough to justify

injunctive relief as drastic as closing all of the designated routes.  Again, the court would prefer

that the BLM spend its time and resources in complying with the requirements of the statutes to

spending time and resources closing down currently designated routes.

        SUWA contends that the legal violations in the case are not just procedural but are

serious.  The court agrees that compliance with the minimization criteria and the NHPA is not

merely procedural but substantively critical to the proper management of the area.  However, the

court must also recognize that while the BLM did not document that it had used the minimization

criteria, such failures with documentation does not necessarily mean that the BLM's future

documentation of the minimization criteria will change the outcome of the route designations.

The court cannot, however, give the BLM the same benefit of the doubt with respect to the

NHPA violation because the BLM admits that it did not conduct the requisite level of study into

the issue.  In fact, the BLM continues to disagree with the court as to the proper level of review

required by the NHPA.[1]  However, that level of review is necessary to identify and protect the

archaeological sites and artifacts in the designated area.  Nonetheless, after many years of open

OHV use and now limited OHV use, the court does not believe that the level of potential harm

justifies immediate injunctive relief closing down all OHV use during the limited remand period.

Because the court is allowing the designated routes to remain in existence while the BLM

meets the requirements of the minimization criteria and NHPA, the most critical issue to the

court is the timing the BLM should be allowed for review and compliance with the governing

statutes.  The court recognizes that the BLM has limited resources and has proactively begun

measures in order to comply with the court's prior order.  However, without evidence that the

designated routes are supported by the minimization criteria and without any study of the

impacted historical artifacts, harm could occur to the area at any time that the proper designations

are not in place and the court believes expedited action is required.  Therefore, the court finds

that the time frame suggested by SUWA is appropriate.

The court orders the following phased deadline for the BLM to (1) apply the

minimization criteria and issue a new ROD and NEPA analysis, as necessary, and (2) perform

the Class III inventories under NHPA and make new findings regarding adverse effects for all

open routes in the "limited area": (a) within one year for any designated routes within the former

---

[1].  The BLM has filed a Motion to Reconsider the court's decision on SUWA's NHPA
challenge.  However, the BLM argues nothing new.  The issue was fully litigated and resolved on
the merits.  There was support in the record for the court's determination, and the court finds no
basis for reconsidering its prior ruling.  Accordingly, the BLM's Motion to Reconsider is denied.

Henry Mountains Field Station planning area; (b) within two years for any designated routes within the former Forest planning area and former Cedar-Beaver-Garfield-Antimony planning area; and (c) within three years for any designated routes within the former Mountain Valley and former Parker Mountain planning areas. The court agrees that this phased approach will allow the BLM to focus its resources on distinct geographic areas at a time. If the BLM has any question as to whether routes fall within these three areas, it should put such routes within the two year category. Furthermore, during the three-year period provided above, the BLM shall provide Plaintiffs with reports of its annual monitoring of OHV impacts as outlined in the ROD. These reports need not be prepared only for purposes of informing Plaintiffs of monitoring efforts; however, they should include the BLM's working papers demonstrating monitoring that would be consistent with materials turned over for a FOIA request.

In addition, the BLM's decisions in the Richfield RMP not to designate the Henry Mountains as an ACEC and not to consider Happy Canyon and Buck and Pasture Canyons as eligible for protection under the Wild and Scenic Rivers Act are vacated. The court orders the BLM to issue a new decision regarding the Henry Mountains ACEC within six months of the date of this decision and a new decision regarding the eligibility of Happy Canyon and Buck and Pasture Canyons as wild and scenic rivers within one year of the date of this decision.

DATED this 22d day of May, 2015.

BY THE COURT:

DALE A. KIMBALL
United States District Judge